# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
### TYLER DIVISION

| | | |
|---|---|---|
| **ADAPTIX, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | JURY TRIAL DEMANDED |
| | ) | |
| **v.** | ) | |
| | ) | |
| **MOTOROLA MOBILITY LLC, et al.** | ) | **CASE NO. 6:12-cv-016** |
| | ) | |
| **Defendants.** | ) | |
| | ) | |
| | ) | |
| | ) | |
| **ADAPTIX, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | JURY TRIAL DEMANDED |
| | ) | |
| **v.** | ) | |
| | ) | |
| **AT&T MOBILITY LLC., et al.** | ) | **CASE NO. 6:12-cv-017** |
| | ) | |
| **Defendants.** | ) | |
| | ) | |
| | ) | |
| | ) | |
| **ADAPTIX, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | JURY TRIAL DEMANDED |
| | ) | |
| **v.** | ) | |
| | ) | |
| **AT&T MOBILITY LLC., et al.** | ) | **CASE NO. 6:12-cv-019** |
| | ) | |
| **Defendants.** | ) | |
| | ) | |
| | ) | |

**ADAPTIX, INC.,**

          **Plaintiff,**

       **v.**

**PANTECH WIRELESS, INC., et al.**

          **Defendants.**

)
)
)   JURY TRIAL DEMANDED
)
)
)
)   **CASE NO. 6:12-cv-020**
)
)
)
)

---

**ADAPTIX, INC.,**

          **Plaintiff,**

       **v.**

**CELLCO PARTNERSHIP d/b/a
VERIZON WIRELESS, et al.**

          **Defendants.**

)
)
)   JURY TRIAL DEMANDED
)
)
)
)   **CASE NO. 6:12-cv-120**
)
)
)
)

---

**ADAPTIX, INC.,**

          **Plaintiff,**

       **v.**

**CELLCO PARTNERSHIP d/b/a
VERIZON WIRELESS, et al.**

          **Defendants.**

)   JURY TRIAL DEMANDED
)
)
)
)
)
)
)
)   **CASE NO. 6:12-cv-121**
)
)
)

---

**ADAPTIX, INC.,**

          **Plaintiff,**

       **v.**

**APPLE INC., et al.**

          **Defendants.**

)
)
)   JURY TRIAL DEMANDED
)
)
)
)   **CASE NO. 6:12-cv-124**
)
)
)

|  |  |  |
|---|---|---|
| | ) | |
| | ) | |
| **ADAPTIX, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | JURY TRIAL DEMANDED |
| | ) | |
| **v.** | ) | |
| | ) | |
| **APPLE INC., et al.** | ) | **CASE NO. 6:12-cv-125** |
| | ) | |
| **Defendants.** | ) | |
| | ) | |
| | ) | |

**DEFENDANTS' MOTION TO TRANSFER VENUE
PURSUANT TO 28 U.S.C. § 1404(a)**

**<u>TABLE OF CONTENTS</u>**

<u>Page</u>

I.     INTRODUCTION .................................................................................................1

II.    FACTUAL BACKGROUND .................................................................................3

    A.     Adaptix.........................................................................................................3

    B.     The Patents & Named Inventors ..............................................................4

    C.     Apple...........................................................................................................6

    D.     Motorola Mobility.....................................................................................6

    E.     LG Electronics ...........................................................................................7

    F.     HTC.............................................................................................................7

    G.     Pantech Wireless .......................................................................................8

    H.     The 4G LTE Network Providers ...............................................................8

    I.     The Baseband Processor Chip Supplier ...................................................9

    J.     Third-Party Prior Art Witnesses ............................................................10

III.    THE NORTHERN DISTRICT OF CALIFORNIA IS CLEARLY MORE
     CONVENIENT.....................................................................................................10

    A.     Adaptix's Strategic Efforts to Create Venue in This District Are Entitled
       to Little Weight .......................................................................................11

    B.     The Private Interest Factors Favor Transfer to the Northern District of
       California .................................................................................................11

          1.     Substantial Relevant Evidence Is Located in the Northern District
              of California.............................................................................11

          2.     The Northern District of California Will Be More Convenient for
              Willing Witnesses ...................................................................12

          3.     More Unwilling Witnesses Will be Subject to Compulsory Process
              in the Northern District of California.......................................13

          4.     Judicial Economy Favors Transfer to the Northern District of
              California .................................................................................13

    C.     The Public Interest Factors Favor Transfer to the Northern District of
       California .................................................................................................14

          1.     The Northern District of California Has a Strong Local Interest in
              Deciding this Case ...................................................................14

IV.    CONCLUSION....................................................................................................15

## TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*In re Microsoft Corp.*,
  630 F.3d 1361 (Fed. Cir. 2011) ..............................................2

*In re Hoffman-La Roche Inc.*,
  587 F.3d 1333 (Fed. Cir. 2009).........................................2, 15

*Droplets v. Amazon.com, Inc.*,
  No. 2:11-cv-00392-MHS-CMC, Dkt. No. 136 (E.D. Tex. June 27, 2012) ............................3

*Optimum Power Solutions LLC v. Apple Inc., et al.*,
  794 F. Supp. 2d 696 (E.D. Tex. 2011) ....................................3, 11, 13

*U.S. Ethernet Innovations, LLC v. Acer, Inc., et al.*,
  No. 6:09-CV-448-JDL, 2010 WL 2771842 (E.D. Tex. July 13, 2010) ...................................3

*Harvey v. Apple Inc.*,
  No. 2:07-CV-327, 2009 WL 7233530 (E.D. Tex. Oct. 8, 2009) ............................3

*Affinity Labs of Texas, LLC v. Apple Inc.*,
  No. 9:09-CV-47, 2009 WL 7376918 (E.D. Tex. Aug. 25, 2009) ............................3

*Zoltar Satellite Systems, Inc. v. LG Electronics Mobile Comm.'s, et al.*,
  No. 2:05-cv-215-LED, Dkt. No. 145 (E.D. Tex. Nov. 30, 2005) ............................3

*Prust v. Apple Inc.*,
  No. 2:09-CV-92 (TJW), 2009 WL 7376919 (E.D. Tex. Oct. 7, 2009) ...................................3

*Brandywine Commc'n Tech., LLC v. AT&T Corp., et al.*,
  2012 WL 1658810 (M.D. Fla. April 25, 2012) .......................................3

*In re Volkswagen of Am., Inc.*,
  545 F.3d 304 (5th Cir. 2008) ................................11, 12, 15

*In re Genentech*,
  566 F.3d 1338 (Fed. Cir. 2009)..........................................12

*In re TS Tech USA*,
  551 F.3d 1315 (Fed. Cir. 2009)........................................13, 15

*On Semiconductor Corp. v. Hynix Semiconductor, Inc.*,
  No. 6:09-CV-390, 2010 WL 3855520 (E.D. Tex. Sept. 30, 2010)......................................13

*Brackett v. Hilton Hotels Corp.*,
  619 F. Supp. 2d 810 (N.D. Cal. 2008) .......................................13

*Internet Machs. LLC v. Alienware Corp., et al.*,
  No. 6:10-CV-023, 2011 WL 2292961 (E.D. Tex. June 7, 2011).........................................14

*In re Volkswagen*,
    371 F.3d 201 (5th Cir. 2004). ...............................................................................................14

*Fujitsu Ltd v. Tellabs, Inc.*,
    639 F. Supp. 2d 761 (E.D. Tex. 2009) ................................................................................15

*Network Prot. Sci., LLC v. Juniper Networks, Inc.*,
    No. 2:10-CV-224-JRG, 2012 WL 194382 (E.D. Tex. Jan 23, 2012) ...................................15

*Eon Corp. IP Holdings, LLC v. Sensus, USA, Inc.*,
    No. 2:10-CV-448, 2012 WL 122562, at *5 (E.D. Tex. Jan. 9, 2012)...................................15

*ATEN International Co. Ltd. v. Emine Tech. Co., Ltd.*,
    261 F.R.D. 112, 126 (E.D. Tex. June 25, 2009) ............................................................13, 15

**Statutes**

28 U.S.C. § 1404(a) ..................................................................................................................3, 10

## I.     INTRODUCTION

Adaptix, Inc. ("Adaptix") has sued nine defendants ("Defendants") in eight related litigations (the "Related Actions") alleging that the mobile cellular devices offered for sale by the Defendants infringe two patents, U.S. Patent No. 6,947,748 B2 (the "'748 Patent") and U.S. Patent No. 7,454,212 (the "'212 Patent").[1]   The defendants in each action consist of a 4G LTE cellular network provider, either AT&T Mobility LLC ("AT&T Mobility") or Cellco Partnership d/b/a/ Verizon Wireless ("Verizon") (collectively the "Network Providers"), and a mobile device manufacturer, namely Apple Inc. ("Apple"), Motorola Mobility LLC ("Mobility"), LG Electronics, Inc. and LG Electronics USA, Inc. (collectively "LGE"), Pantech Wireless, Inc. ("Pantech Wireless"), HTC America Inc. and HTC Corp. (collectively "HTC") (collectively the "Device Providers").   Defendants respectfully request the Court to transfer the Related Actions to the Northern District of California because it is significantly more convenient for the parties and likely non-party witnesses.   Compelling reasons support this motion.

*First*, while the Northern District of California has direct, concrete, and extensive connections to this case, the Eastern District of Texas has virtually none.   Adaptix claims its principal place of business is in Carrollton, Texas, where it exists as a non-practicing entity. However, Adaptix relocated to Carrollton less than 4 years ago and, until then, maintained its principal place of business in Washington State.   Many of Adaptix's former employees—including three of the four named inventors—still reside on the West Coast, in Washington and California.   Adaptix's parent company, Acacia Research Group LLC, maintains offices in both Newport Beach, California, and Frisco, Texas.   Acacia Research Corporation, the publicly traded

---

[1] In addition to the Related Actions, Adaptix has brought suit against the carriers and manufacturers of 4G LTE network base stations.  *See Adaptix Inc. v. Alcatel-Lucent USA, Inc.*, *et al.*, Civ. No. 6:12-cv-00022; *Adaptix Inc. v. Alcatel-Lucent USA, Inc.*, *et al.*, Civ. No. 6:12-cv-00122; *Adaptix Inc. v. Alcatel-Lucent USA, Inc.*, *et al.*, Civ. No. 6:12-cv-00123; *Adaptix Inc. v. Nokia Siemens Networks US, LLC*, *et al.*, Civ. No. 6:12-cv-00318; *Adaptix Inc. v. T-Mobile USA, Inc.*, *et al.*, Civ. No. 6:12-cv-00369.  Those disputes involve different asserted patents.

parent of Acacia Research Group LLC, is headquartered in Newport Beach.  As the Federal Circuit has made clear, strategic efforts to create ties to a jurisdiction for litigation purposes are entitled to no weight in evaluating the appropriate venue.  *See In re Microsoft Corp.*, 630 F.3d 1361, 1364 (Fed. Cir. 2011) (courts should not "honor connections to a preferred forum made in anticipation of litigation and for the likely purpose of making that forum appear convenient").

*Second*, the Northern District of California is both uniquely connected to and clearly a more convenient venue.  Several Defendants are headquartered in or maintain major offices there.  For example, Apple has had its headquarters and primary research and development facilities in Cupertino, California since its founding in 1976—currently employing approximately 13,400 individuals there—and the accused Apple product, the WiFi + cellular version of the new iPad, was designed and developed there by Apple's engineers.  In seven of the Related Actions, the cellular communications functionality in every accused mobile device is implemented by a baseband processor chip supplied by Qualcomm Inc. ("Qualcomm"), a non-party California company.  Qualcomm chips supply the accused functionality in at least some of the accused mobile devices in the eighth action.  In addition, both Network Providers have facilities in Northern California where several witnesses who may possess knowledge relevant to this litigation work.  Also, a large number of third-party witnesses likely to have knowledge and documents relevant to invalidity, including possible derivation claims, reside in California.

*Third*, the Northern District of California possesses a unique, particularized local interest in passing judgment on the products and cellular technology—the design and development of which occurred within its boundaries—now before this Court.  *See In re Hoffman-La Roche Inc.*, 587 F.3d 1333, 1336 (Fed. Cir. 2009) (finding a strong local interest where a case "calls into question the work and reputation of several individuals residing in or near that district").  In

similar circumstances, Defendants' strong connections to Northern California have been recognized time and time again by courts in this District (and others) when transferring patent infringement suits to the Northern District of California.[2]

Given that the center of gravity is in Northern California, and the comparative absence of relevant defendants and evidence in this District, the relevant factors strongly favor transfer.

## II. FACTUAL BACKGROUND

### A. Adaptix

Adaptix's predecessor, Broadstorm, Inc. ("Broadstorm"), was a Delaware corporation based in Washington State and co-founded by Dr. Hui Liu in early 2000. (Ex. A, at 5.[3]) Dr. Liu was then, as he is now, a professor at the University of Washington. (Ex. B.) The first patent applications were filed by the Washington-based Broadstorm team in late 2000. *Id.*

In April 2004, Dr. Liu and Broadstorm founded Adaptix and purportedly transferred the intellectual property rights of Broadstorm to Adaptix. (Ex. C.) The principal place of business for Adaptix was in Washington State until at least January 2009. (Ex. D. *See also* '212 Patent, issued November 2008.) At some point thereafter, Adaptix opened an office in Carrollton, which it now alleges to be its principal place of business. (Ex. D at 4.) Adaptix does not offer any products for sale and instead "focuses on licensing its extensive and growing 4G technology patent portfolio." *See* www.Adaptix.com. In early 2012, prior to filing the Related Actions,

---

[2] *See, e.g.*, *Droplets v. Amazon.com, Inc.*, No. 2:11-cv-00392-MHS-CMC, Dkt. No. 136 (E.D. Tex. June 27, 2012); *Optimum Power Solutions LLC v. Apple Inc., et al.*, 794 F. Supp. 2d 696 (E.D. Tex. 2011); *U.S. Ethernet Innovations, LLC v. Acer, Inc., et al.*, No. 6:09-CV-448-JDL, 2010 WL 2771842 (E.D. Tex. July 13, 2010); *Harvey v. Apple Inc.*, No. 2:07-CV-327, 2009 WL 7233530 (E.D. Tex. Oct. 8, 2009); *Affinity Labs of Texas, LLC v. Apple Inc.*, No. 9:09-CV-47, 2009 WL 7376918 (E.D. Tex. Aug. 25, 2009); *Zoltar Satellite Systems, Inc. v. LG Electronics Mobile Comm.'s, et al.*, No. 2:05-cv-215-LED, Dkt. No. 145 (E.D. Tex. Nov. 30, 2005); *see also Prust v. Apple Inc.*, No. 2:09-CV-92 (TJW), 2009 WL 7376919 (E.D. Tex. Oct. 7, 2009); and *Brandywine Commc'n Tech., LLC v. AT&T Corp., et al.*, 2012 WL 1658810 (M.D. Fla. April 25, 2012).
[3] Unless otherwise noted, "Ex.__" refers to the exhibits to the Affidavit of Jonathan Hardt in Support of Defendants' Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a) ("Hardt Decl."), filed herewith.

Adaptix was acquired by a subsidiary of Acacia Research Corporation ("Acacia"), a California-based holding company for a variety of non-practicing entities.  (Ex. E, at 1.)

Finally, the former Adaptix employees and directors listed in Exhibit A to Adaptix's Initial Disclosures (*see* Ex. F, at 5) lack any material connection to this District.  For Hui Liu and Byron Young, Adaptix disclosed Seattle (Liu) and Los Altos, California (Young) addresses.  Adaptix does not know the address of the remaining individuals.  Yet it appears that all but one of those individuals still reside on the West Coast:

- Timothy D. Montgomery, former CFO.  Current address believed to be in Concrete, WA;
- Nicholas D. Thomas, former V.P. Sales.  Current address believed to be in Seattle, WA;
- Martin Mu (a.k.a. Fuqi Qi Mu), former V.P. Advanced Technology Group.  Current address believed to be in Bellevue, WA;
- Michael J. Pisterzi, former CEO. Current address believed to be in Plano, TX.

(Hardt Decl. ¶¶27-30.)

None of the other former or current Adaptix employees whom Defendants believe will possess information relevant to Adaptix's claims has connections with the Eastern District of Texas.

- Vernon L. Fotheringham, former President and C.E.O. of both Adaptix and Broadstorm. (www.vernfotheringham.com)  Current address believed to be in North Bend, WA.
- Guanbin Xing, current Adaptix employee and former Ph.D. candidate at the University of Washington.  Current address believed to be in Bellevue, WA.

(Hardt Decl. ¶¶31-32.)

Adaptix lists one employee, Executive Vice President Dooyong Lee, as having the same address as Adaptix's alleged principal place of business.  Yet even Mr. Lee ostensibly has both California and Eastern District of Texas ties—he is the CEO of Acacia Research Group LLC, the Acacia subsidiary with offices in both Newport Beach, and Frisco.  (Ex. G.)

### B.    The Patents & Named Inventors

Adaptix asserts both the '748 and '212 patents in each of the Related Actions.  The patents are both titled "OFDMA With Adaptive Subcarrier Cluster Configuration And Selective

Coding," and share a common specification (the '212 Patent issued from a continuation of the '748 patent's application).   Defendants understand that Adaptix alleges these patents are essential to practicing the 4G LTE communications standard promulgated by the 3GPP SSO.[4]

Both patents allegedly were developed by researchers at Broadstorm, based in Bellevue, Washington.   Adaptix was a Washington-based company when the patents were purportedly assigned to it.   *See* Exs. 1-2 to Compl.; *see also* Ex. D.   The patents list four Washington residents as inventors, and it appears that three of them still live in Washington.   (Ex. B; Hardt Decl. ¶¶33-34.)   It appears that only one named inventor has left Washington.   (Hardt Decl. ¶35.)

There are also related patents that, although not asserted here, list additional inventors who likely have information relevant to Adaptix's claims—either because their patents are related to the patents-in-suit or they otherwise worked closely with the Broadstorm team.[5]   Of those individuals, Hujun Yin is currently an Intel employee residing in Northern California; Manyuan Shen is currently a Marvell employee residing in Northern California; Guanbin Xing is currently an Adaptix employee residing in Bellevue, Washington; and Martin Mu is currently residing in Bellevue, Washington.   (Ex. Y; Ex. I; Hardt Decl. ¶¶29, 32)

The attorneys identified by Adaptix as being involved in prosecution of the patents are currently located across the country, including in Texas.   However, the attorney seemingly most involved in the prosecution of the '748 Patent,  Michael Mallie, practices in Northern California. (Ex. J.)   The only prosecuting attorney disclosed as having involvement in the prosecution of both patents-in-suit, Jerry Mahurin, now practices in Colorado.   (Ex. K.)

---

[4] Adaptix has served infringement contentions in some of the Related Actions.   These infringement contentions rely on the 4G LTE standard available at www.3gpp.org/specifications.   (*See, e.g.*, Ex. H at 9-17.)

[5] These related patents include U.S. Patent Nos. 6,904,283 and 7,146,172, which issued from continuations-in-part of the '748 Patent's application, and U.S. Patent Nos. 7,573,851, 6,870,808, and 7,072,315, which share one or more named inventors with the patents-in-suit.   Adaptix is the named assignee of all of these related patents.

### C.      Apple

Apple is a consumer electronics company founded in 1976.   (Declaration of Mark Buckley ("Buckley Decl.") ¶¶ 2-3).)   Apple is a California corporation with headquarters, management and primary research and development facilities in Cupertino, California.   (*Id.* at ¶ 3.)  Apple currently employs approximately 13,400 people who work in or near its headquarters. (*Id.*)  The research, design, and development of the WiFi + Cellular version of the new iPad[6] took place in Cupertino.   (*Id.* at ¶ 4.)   Virtually all Apple business records concerning the research, design, development, marketing strategy, and product revenue relating to the accused product are located in or near Cupertino.   (*Id.*)   Aside from two retail stores, Apple has no facilities in this District and none of Apple's operations relevant to the research, design, and development of the WiFi + Cellular version of the new iPad is located here.   (*Id.* at ¶¶ 7-8.)

### D.      Motorola Mobility

Mobility is a Delaware limited liability company with a principal place of business in Illinois.   (Declaration of Motorola Mobility ("Mobility Decl.") ¶ 3.))   Mobility is a wholly-owned subsidiary of Google Inc., which has its headquarters in the Northern District of California.   (*Id.* at ¶ 6.)   Mobility currently employs just under 1,500 people in California in a number of facilities, including its Sunnyvale facility, which is in the Northern District of California.   (*Id.* at ¶ 5.)   Mobility has no offices or other facilities within the Eastern District of Texas, and none of the research, design, or development of the accused products took place here. (*Id.* at ¶¶ 7-8.)   Mobility incorporates chipsets made and designed by Qualcomm in a number of its products, and Qualcomm chipsets provide some or all of the cellular functionality in at least some of the accused products here.   (*Id.* at ¶¶ 9-10.)

---

[6] Apple's new iPad is referred to in Adaptix's Complaint, and occasionally referred to in media publications, as the "Retina Display iPad."

### E.     LG Electronics

LG Electronics, Inc., is a Korean corporation, and LG Electronics USA, Inc. ("LGE USA") is a fully owned U.S. subsidiary (collectively "LGE").   A San Diego, California based subsidiary of LGE USA is responsible for importing, marketing, and selling the accused LGE mobile devices.   (Declaration of Lisa Nagamoto ("Nagamoto Decl.") ¶6.)   LGE USA's subsidiary (and its wholly owned subsidiaries) employs 145 people in San Diego and 34 people in San Jose, California (*Id*. at ¶8.), including San Diego based employees responsible for testing the accused LGE mobile devices at facilities located in San Diego and Seattle.  (*Id*. at ¶¶10-13.) All of the accused LGE mobile devices incorporate Qualcomm baseband chips and interaction between Qualcomm and LGE is handled by San Diego based employees.   (*Id*. at ¶¶14-15.) These employees also provide marketing materials and training on the accused LGE mobile devices to network providers, such as AT&T Mobility.  (*Id*. at ¶16.)   LGE also maintains facilities and a staff of ten employees in Seattle.  (*Id*. at ¶11.)  Those employees support LGE's relationship with AT&T Mobility, identify features and functions AT&T Mobility desires in LGE-branded mobile devices, and conduct testing related to market launch.  (*Id*. at ¶¶11-13.)  No LGE entity has offices, facilities or employees in the Eastern District of Texas.  (*Id*. at ¶9.)

### F.     HTC

HTC manufactures mobile phones and tablet computers.   (Declaration of Stephanie Bariault ("Bariault Decl.") ¶ 4.)  HTC America is a Washington corporation with its principal place of business and headquarters in Bellevue, Washington.  (*Id*. at ¶ 3.)  HTC Corp. is a Taiwanese corporation with its headquarters in Taiwan.  (*Id*.)  HTC Corp. is the parent company of HTC America.  (*Id*.)  HTC America coordinates its sales activity in the United States from its headquarters in Bellevue, Washington, where the vast majority of its employees work.  (*Id*. at ¶ 4.)  HTC's records and equipment relating to the design, manufacture, and operation of its

mobile phones and tablet computers are primarily located in Washington and Taiwan.  (*Id*. at ¶ 7.)  HTC's records relating to corporate finances and to the marketing and sale of mobile phones and tablet computers also are primarily located in Washington and Taiwan.  (*Id*.)  Most  of  the HTC engineers, including those who worked on the hardware and software design, development, integration, and manufacturability of HTC's products work and live in Taiwan.  (*Id*. at ¶ 8.)  HTC has no office in the Eastern District of Texas.  (*Id*. at ¶ 5.)  No HTC documents relevant to this action and no HTC engineers are located in the Eastern District of Texas.  (*Id*. at ¶ 7-8.)  All of the accused HTC devices incorporate chipsets from Qualcomm. (*Id*. at ¶ 10.)

### G.    Pantech Wireless

Pantech Wireless is a Georgia corporation located in Atlanta.  (Declaration of YongJin Kim ("YongJin Kim Decl.") ¶ 3).  Although Pantech Wireless markets mobile devices nationwide, the company has no particularized presence or facility in this District.  (*Id.* at ¶ 10).  Furthermore, Pantech Wireless does not manufacture or sell the accused Pantech Breakout device in Texas, or elsewhere.  (*Id.* at ¶¶ 3-4).  That accused product is understood to be manufactured by Pantech Co., Ltd., a company located in Korea.  (*Id*. at ¶ 3).  Therefore, "[w]itnesses with the best knowledge of the design, structure, and functionality of the Pantech Breakout device would be employees of Pantech Co., Ltd … in Seoul, Republic of Korea."  (*Id*. at ¶ 6).  On the other hand, "[w]itnesses with the best knowledge of the detail, operation, and architecture of [the] Qualcomm baseband processor chips [understood to be] used in the Pantech Breakout device would be employees of Qualcomm," located in California.  (*Id*. at ¶¶ 7, 9).

### H.    The 4G LTE Network Providers

Adaptix's infringement allegations appear to involve the use of a mobile device to access one of the Network Provider's 4G LTE networks.  The Network Providers both offer their 4G

LTE networks in many states, but neither has witnesses or documents in the Eastern District of Texas that are relevant to the Related Actions.  (Verizon Decl. ¶¶ 4-5, 7; AT&T Decl. ¶¶ 2, 5.)

Verizon is a Delaware general partnership headquartered New Jersey.  However, it also maintains an important network facility in Walnut Creek, California, where relevant documents and several witnesses who are among the most knowledgeable concerning the accused technology are located.  (Verizon Decl. ¶¶ 3-5.)  Verizon has no relevant documents and no employees with relevant knowledge in this District.  (*Id.* at ¶¶ 4-5.)  A majority of the end-user devices on Verizon's LTE network rely on chipsets manufactured by Qualcomm, (*Id.* at ¶ 6.), and California-based Cisco Systems, Inc. supplies core network equipment to Verizon.  (*Id.* ¶ 6.)

AT&T Mobility, a Delaware limited liability company, conducts its business nationwide and has no facilities in the Eastern District of Texas for the research, design, development, testing, or marketing relating to the accused mobile devices and their interaction with the AT&T 4G LTE network; the majority of witnesses and facilities with knowledge that may be relevant to the Related Actions are located in Seattle.  (AT&T Decl. ¶ 3.)

## I.      The Baseband Processor Chip Supplier

Adaptix appears to be targeting certain cellular communications capabilities of the accused mobile devices on Verizon's and AT&T Mobility's 4G LTE networks.  Based on that understanding, third-party witnesses and documents potentially critical to the claims and defenses in this case are located in California.  In seven of the Related Actions, the cellular communications functionality in every accused mobile device is implemented by a baseband processor chip supplied by Qualcomm.  *See Supra* Sections II.C-G.  Qualcomm baseband processor chips supply the accused functionality in at least some devices in the remaining action.  (Mobility Decl. ¶ 10)  Qualcomm's principal place of business is in San Diego, California (within the subpoena power of the Northern District of California).  (Buckley Decl. at ¶ 5.)  The

detail, operation, and architecture of the baseband chips available in the accused mobile devices will likely be best understood by engineers and programmers at Qualcomm.  (*See, e.g.*, *id.*)

### J.     Third-Party Prior Art Witnesses

While Defendants' investigations have just begun, a number of prior art witnesses in California who likely have knowledge and documents relevant to invalidity, including possible derivation claims, have already been identified.  Those witnesses include at least:

- Dr. David N.C. Tse, <u>University of California Berkeley</u>, co-inventor of U.S. Patent No. 6,694,147, (Ex. L.);

- Dr. Arogyaswami Paulraj, Professor Emeritus <u>Stanford University</u>, co-founder of Beceem Communications, co-inventor of U.S. Patent Nos. 6,400,699 and 6,567,387, (Ex. M.);

- Dr. Jose Tellado, Co-Founder Teranetics, Inc., <u>San Jose, California</u>, co-inventor of U.S. Patent No. 6,400,699, (Ex. N.);

- Partho Mishra, believed to be working in <u>San Francisco</u> area, co-inventor of U.S. Patent Nos. 6,400,699 and 6,567,387, (Ex. O.);

- Dr. Sanjay Kasturia, Technical Advisor at Altierre Corp. in <u>San Jose, California</u>, co-inventor of U.S. Patent No. 6,567,387, (Ex. P.);

- Dr. John M. Cioffi, Hitachi Professor Emeritus of Engineering at <u>Stanford University</u>, co-author of, *inter alia*, Pilot Tone Selection For Channel Estimation In A Mobile OFDM System, Consumer Electronics IEEE, Volume 44, Issue 3 (1998), (Ex. Q.);

- Dr. Sarah Kate Wilson, Associate Professor of Electrical Engineering at <u>Santa Clara University</u>, co-author of, *inter alia*, A Comparison of a Single-Carrier System Using a DFE and a Coded OFDM System in a Broadcast Rayleigh-Fading Channel, 1995 IEEE International Symposium on Information Theory, (Ex. R.);

- Broadcom Corporation ("Broadcom") and Beceem Communications Inc. ("Beceem"). Broadcom acquired Beceem in 2010. (Ex. S.)[7]

## III.   THE NORTHERN DISTRICT OF CALIFORNIA IS CLEARLY MORE CONVENIENT

Transfer under Section 1404(a) is appropriate upon a "good cause" demonstration by the moving party "that the transferee venue is clearly more convenient."  *In re Volkswagen of Am.,*

---

[7] Beceem, cofounded by Dr. Paulraj, developed and patented prior art systems believed to be relevant to the Related Actions. (Ex. T; *see also infra* Section III.B.3.)  Broadcom is based in Irvine, California, and has offices in San Jose, Sunnyvale, and Santa Clara (2 locations), California; Beceem was headquartered in Santa Clara, California.

*Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (hereinafter "*Volkswagen II*").  In deciding whether a transferee venue is "clearly more convenient," the Court must assess and balance both private and public interest factors.  *Id.* at 315.  The plaintiff's choice of venue is ***not*** a factor in this analysis.  *Id.* at 314 n.10.  Here, application of the public and private factors compels the conclusion that the Northern District of California is clearly more convenient

### A.    Adaptix's Strategic Efforts to Create Venue in This District Are Entitled to Little Weight

Adaptix's connection to this District is both recent and remote.  Adaptix's principal place of business was in Washington State from its formation in 2000 (as Broadstorm) until at least early 2009, and only one of Adaptix's current employees lists an address in this District (which, incidentally, coincides with Adaptix's claimed business address).  Given these facts, Adaptix's efforts to establish venue in the Eastern District of Texas should carry little weight.  *Cf. Optimum Power Solutions LLC v. Apple Inc., et al.,* 794 F.Supp.2d 696, 702 (E.D. Tex. 2011) (finding generalized allegations of localized interest "could apply virtually to any judicial district or division in the United States [and] are disregarded in favor of particularized local interests").

### B.    The Private Interest Factors Favor Transfer to the Northern District of California

#### 1.    Substantial Relevant Evidence Is in the Northern District of California

Third-party witnesses and documents potentially critical to the claims and defenses in the Related Actions are located in or near the Northern District of California.  The lead attorney in the prosecution of the '748 patent practices law in the district.  (Ex. J.)  Several third-party companies based in California possess relevant evidence, including Qualcomm, which supplies the chips that enable the accused cellular features of the new iPad, and Broadcom Corp., which acquired a company that developed and patented prior art systems Defendants believe will be

relevant.  These third parties have multiple facilities in the Northern District of California.  (Exs. U-V.)  Finally, several witnesses likely to have knowledge and documents relevant to invalidity, including possible derivation claims, reside in the Northern District of California.  (*Supra* Section II.J.)  When coupled with the number of Apple witnesses and volumes of evidence (*infra* Section III.C.1.) in the Northern District of California, the relevant evidence in the Northern District of California clearly favors transfer.

### 2. The Northern District of California Will Be More Convenient for Willing Witnesses

For willing witnesses, the convenience and cost of attending trial also heavily favors transfer.  The Fifth Circuit has adopted a "100-mile rule," requiring that "[w]hen the distance between an existing venue for trial of a matter and a proposed venue . . . is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled."  *In re Genentech*, 566 F.3d at 1343; *see also Volkswagen II*, 545 F.3d at 317.

Apple's likely witnesses are all located in the Northern District of California.  (Buckley Decl. at ¶ 4.)  Similarly, Verizon and LGE have key witnesses located in Northern California. (Verizon Decl. at ¶ 4; LGE Decl. at ¶ 8.)  To testify at trial in Tyler, these witnesses would be burdened with a trip of 1567 miles from San Francisco on two separate flights, lasting over five hours.  (Ex. W.)  It is also substantially more convenient for HTC witnesses traveling from both Washington and Taiwan to appear in the Northern District of California than in this District—not only are the travel distances significantly shorter, but there are substantially more flights to San Francisco from Seattle and Taiwan, including nonstop flights, than there are to Tyler, or even Dallas.  Due to the additional travel time, attendance at trial for these witnesses is more likely to result in multiple days away from their homes and work.  *Cf. In re Genentech,* 566 F.3d at 1343 (finding the cost of attendance for and convenience of the witnesses "is probably the single most

important factor in transfer analysis"); *In re TS Tech USA*, 551 F.3d at 1320 (finding "clear error" in the failure to consider an 900 miles of travel for trial witnesses).  Any witness called by Adaptix from Acacia's California headquarters would be subject to similar inconveniences.

### 3. More Unwilling Witnesses Will be Subject to Compulsory Process in the Northern District of California

The availability of compulsory process to secure the attendance of third-party witnesses likewise favors transfer when "more third-party witnesses reside within the transferee venue." *Optimum Power Solutions*, 794 F. Supp. 2d at 701; *see On Semiconductor*, No. 6:09-CV-390, 2010 WL 3855520, at *5 (favoring transfer where several third-party witnesses would "not be subject to this Court's subpoena power, but would be subject to the Northern District's"). Further, third-party witnesses residing in California would be subject to absolute subpoena power for trial.  *See Brackett v. Hilton Hotels Corp.*, 619 F. Supp. 2d 810, 821 (N.D. Cal. 2008) ("The California district courts have the power to subpoena witnesses throughout the state. . . ."). Here, a number of relevant third-party witnesses are in California and would thus be subject to compulsory process in the Northern District of California, but not in this Court.  As noted above, the baseband chip supplier Qualcomm is based in California, as is Broadcom, a party likely to employ witnesses with knowledge about prior art systems.  Further, numerous prior art inventors likely to have knowledge and documents relevant to invalidity, including possible derivation claims, reside in the transferee district.  *See supra*, Section II.J.  The presence of these third-party witnesses in California weighs heavily in favor of transfer.[8]  *Optimum Power Solutions*, 794 F. Supp. 2d at 703; *ATEN Int'l*, 261 F.R.D. at 125.

### 4. Judicial Economy Favors Transfer to the Northern District of California

---

[8] Other likely third-party witnesses—including the inventors and founders of Adaptix and Broadstorm—reside on the West Coast and will undoubtedly find a trial in the Northern District of California more convenient.

Transfer would foster judicial economy.  First, these cases were only recently filed and the Court has not decided any substantive issues, nor has any material discovery occurred.  In only two of the eight Related Actions have the parties served initial disclosures.  Thus, transfer at this stage in all the Related Actions would foster judicial economy by keeping the common issues in a far more convenient forum before discovery of facts located in the transferee forum begins.  *See, e.g.*, *Internet Machs. LLC v. Alienware Corp., et al.*, No. 6:10-CV-023, 2011 WL 2292961, at *8 (E.D. Tex. June 7, 2011).

Further, this case is likely to involve extensive discovery relating to patent invalidity and prior art systems, many of which were developed in California, where the transferee forum would hold absolute subpoena power.  Finally, the benefits of litigating these matters in one forum with similar schedules is compelling.  These practical considerations, and the ability to transfer the actions before extensive discovery starts, all favor transfer.

### C.    Public Interest Factors Favor Transfer to the Northern District of California

Three public interest factors are neutral and likely will bear little weight on the Court's analysis.  For example, neither forum is favored in light of administrative difficulties flowing from court congestion because the median time to trial in the two courts is similar.  (Ex. X.) Similarly, both courts have extensive experience with complicated patent cases and the governing law, and there are no foreseeable foreign law or conflict of law issues.  However, the Northern District of California's interest in the Related Actions indisputably favors transfer.

### 1.    The Northern District of California Has a Strong Local Interest in Deciding this Case

The Fifth Circuit has explained that "[j]ury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation."  *In re Volkswagen*, 371 F.3d 201, 206 (5th Cir. 2004).  The *Volkswagen* court's statement recognizes the importance of

analyzing the "factual connection" that a case has with both the transferee and transferor venues. *See id.* Thus, generalized local interests, those that "could apply virtually to any judicial district or division in the United States," are disregarded in favor of particularized local interests. *Volkswagen II*, 545 F.3d at 318; *see also In re TS Tech,* 551 F.3d at 1321 (disregarding local interest because the products were "sold throughout the United States").

Here, the accused mobile devices and the Network Providers' networks are not uniquely connected to this District. *See supra* Sections II.C-H. By contrast, the Northern District of California has a strong and particularized local interest in this case. Apple was founded and has maintained its headquarters there since 1976, now employing approximately 13,400 people at its facilities. Both accused Network Providers have potentially relevant facilities in the Northern District of California. The third-party supplier of the baseband processor in nearly every accused mobile device is located in California. Several relevant non-party witnesses are located in Northern California or the West Coast generally and other parties have relevant witnesses in California. Simply put, Adaptix's allegations call into question the "work and reputation" of those individuals who developed the accused mobile devices and the technology used to access the Network Providers' 4G LTE networks[9]—California is clearly the "center of gravity" with respect to facts of the Related Actions. *See ATEN Int'l*, 261 F.R.D. at 126.

## IV.   CONCLUSION

For all the foregoing reasons, Defendants respectfully move the Court to transfer the Related Actions to the Northern District of California.

---

[9] *See, e.g.*, *In re Hoffman-La Roche*, 587 F.3d at 1336 (finding a strong local interest where case "calls into question the work and reputation of several individuals residing in or near that district); *see also Fujitsu*, 639 F. Supp. 2d at 769; *Network Prot. Sci., LLC v. Juniper Networks, Inc.*, No. 2:10-CV-224-JRG, 2012 WL 194382, at *7 (E.D. Tex. Jan 23, 2012); *Eon Corp. IP Holdings, LLC v. Sensus, USA, Inc.*, No. 2:10-CV-448, 2012 WL 122562, at *5 (E.D. Tex. Jan. 9, 2012).

Dated: August 13, 2012

**OF COUNSEL:**

Mark D. Selwyn
Craig Evan Davis
WILMER CUTLER PICKERING
    HALE AND DORR LLP
950 Page Mill Road
Palo Alto, California 94304
Tel.: (650) 858-6000
Fax: (650) 858-6100

Peter J. Shen
WILMER CUTLER PICKERING
    HALE AND DORR LLP
399 Park Avenue
New York, New York 3056
Tel.: (212) 230-8800
Fax: (212) 230-8888

Jonathan L. Hardt
WILMER CUTLER PICKERING
    HALE AND DORR LLP
1875 Pennsylvania, Ave NW

Respectfully submitted,

By:  */s/  Geoffrey M. Godfrey*
Mark Donnell Flanagan
Robert Michael Galvin
Geoffrey Mark Godfrey
WILMER CUTLER PICKERING
    HALE AND DORR LLP
950 Page Mill Road
Palo Alto, CA 94303
Tel:  (650) 858-6000
Fax: (650) 858-6100

Michael E Jones
Patrick Colbert Clutter , IV
Potter Minton, a Professional Corporation
110 N. College Avenue
Suite 500
Tyler, TX 75702
Tel:  903-597-8311
Fax: 903-593-0846

*Attorneys for Defendant and Counterclaim-
Plaintiff Cellco Partnership d/b/a Verizon
Wireless.*

Washington DC, 20006
Tel.: (202) 663-6000
Fax: (202) 663-6363

*Attorneys for Defendant and Counterclaim-
Plaintiff Apple Inc.*

Christopher A. Hughes
James T. Bailey
John T. Moehringer
Regina M. Lutz
Cadwalader, Wickersham & Taft
One World Financial Center
New York, NY 10281
Tel:  (212) 504-6000
Fax: (212) 504-6666

Fred Irvin Williams
Akin Gump Strauss Hauer & Feld LLP
300 West 6th St
Suite 1900
Austin, TX 78701
Tel:  (512) 499-6218
Fax: (512) 499-6290

David R Clonts
Akin Gump Strauss Hauer & Feld LLP
1111 Louisiana
44th Floor
Houston, TX 77002
Tel:  (713) 220-5886
Fax: (713) 236-0822

Todd Eric Landis
Akin Gump Strauss Hauer & Feld LLP
1700 Pacific Avenue
Suite 4100
Dallas, TX 75201
Tel:  (214) 969-2787
Fax: (214) 969-4343

Brian James Gaffney
AT&T Services Inc
One AT&T Plaza
Ste 2900
208 South Akard Street
Dallas, TX 75202
Tel:  (214) 757-3024

Fax: (214) 746-2272

Timothy J Dyll
AT&T Services Inc
One AT&T Plaza
Ste 2900
208 South Akard Street
Dallas, TX 75202
Tel:  214-757-3546
Fax: 214-746-2212

*Attorneys for Defendant AT&T Mobility LLC.*

Tyler T. VanHoutan
Phillip David Price
Winston & Strawn LLP
1111 Louisiana
25th Floor
Houston, TX 77002-5242
Tel:  (713) 651-2600
Fax: (713) 651-2700

*Attorneys for Defendant and Counterclaim-
Plaintiff Motorola Mobility LLC.*

James C. Brooks
Michael David Owens
Orrick Herrington & Sutcliffe LLP
777 S Figueroa St
Ste 3200
Los Angeles, CA 90017-5855
Tel:  (213) 629-2020
Fax: (213) 612-2499

Steven Routh
Orrick, Herrington & Sutcliffe LLP
Columbia Center
1152 15th Street, NW
Washington, DC 20005-1706
Tel:  (202) 339-8509
Fax: (202) 339-8500

Alex Verbin Chachkes
Orrick Herrington & Sutcliffe LLP
666 Fifth Avenue
New York, NY 10103-0001
Tel:  (212) 506-3748
Fax: (212) 506-5151

*Attorneys for Defendants and Counterclaim-*
*Plaintiffs LG Electronics, Inc., and LG Electronics*
*USA, Inc., and Defendant AT&T Mobility LLC.*

Fred Irvin Williams
Akin Gump Strauss Hauer & Feld LLP
300 West 6th St
Suite 1900
Austin, TX 78701
Tel:  (512) 499-6218
Fax: (512) 499-6290

Todd Eric Landis
Akin Gump Strauss Hauer & Feld LLP
1700 Pacific Avenue
Suite 4100
Dallas, TX 75201
Tel:  (214) 969.2787
Fax: (214) 969.4343

*Attorneys for Defendants and Counterclaim-*
*Plaintiffs HTC America Inc., and HTC Corp., and*
*Defendant AT&T Mobility LLC.*

Alan A Wright
Stephen D Dove
Wayne M Helge
HC Park & Associates PLC
8500 Leesburg Pike
Suite 7500
Vienna, VA 22182
Tel:  (703) 288-5105
Fax: (703) 288-5139

Melissa Richards Smith
Gillam & Smith, LLP
303 South Washington Avenue
Marshall, TX 75670
Tel:  (903) 934-8450
Fax: (903) 934-9257

*Attorneys for Defendant and Counterclaim-*
*Plaintiff Pantech Wireless, Inc.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on August 13, 2012. Any other counsel of record will be served by First Class U.S. mail on this same date.

*/s/  Geoffrey M. Godfrey*

## CERTIFICATE OF CONFERENCE

The undersigned hereby certifies that counsel for Defendants have complied with the meet and confer requirement in Local Rule CV-7.  This motion is opposed.  The parties met and conferred on August 9, 2012.  The conference was attended by Melissa Smith on behalf of Defendants and Wes Hill on behalf of Plaintiff. During this conference, counsel for Defendants and Plaintiff attempted to resolve all disputes before the filing of this motion.  However, no agreement could be reached.  Discussions have conclusively ended in an impasse, leaving an open issue for the Court to resolve.

*/s/ Melissa Smith*
Melissa Smith